OPINION OF THE COURT
Dominic J. Lodato, J.
Before this court for trial are two separate actions. The first is brought by Shirpsen Realty Corp. and 1039 Bergen Realty Corp. against the City of New York, Commissioner of Finance of the City of New York, and Attorney-General of the State of New York, seeking to have section 22 of the General Municipal Law and title C of chapter 17 of the Administrative Code of the City of New York declared unconstitutional and to invalidate the tax lien asserted by the City of New York.
The second action is brought by the City of New York against Unsafe Building and Structure No. 616 Marcy Avenue, Shirpsen Realty Corp., owner seeking reimbursement in the amount of $15,833 paid by the city to J.O. *715 G.I. Wrecking Co., Inc., for demolition of the building in question.
Both sides agreed to waive a jury.
Counsel for the respective parties have also agreed between themselves as to the facts which have been stipulated to and submitted to the court and are as follows:
Shirpsen Realty Corp. is the owner of a parcel described as 616 Marcy Avenue, Brooklyn, New York, and designated at Tax Lot 49 of Block 1766, County of Kings. This parcel was improved by a 4-story, 16-family multiple dwelling brick building. On or about November 2, 1977, plaintiff Shirpsen Realty Corp. entered into an in rem agreement which provided that plaintiff was to pay to the City of New York the lump sum of $2,467 for delinquent taxes, assessments or other legal charges and interest and thereafter was to pay eight quarterly installments of $925 commencing January 1, 1978 until the balance of the taxes due were paid. Plaintiff failed to pay the $925 due on October 1, 1978, breaching the agreement. It subsequently failed to pay any taxes past due or current.
On or about October 9 and 16, 1978, two fires occurred to the premises, causing damage to the roof and top floor. Plaintiff filed a claim with its insurance carrier for the fire losses and on November 29,1979, settled this claim in the amount of $33,000.
The building remained vacant and unattended, requiring the Department of Buildings to institute an unsafe building procedure in Supreme Court, Kings County, under Index No. 5711/79. Justice Rader, by an order dated March 22, 1979 found the building unsafe and directed its demolition. The Department of Buildings requested the Department of Housing Preservation and Development (hereinafter referred to as HPD) to let a contract to demolish the building. A contract was let by HPD to J.O.G.I. Wrecking Co., Inc., who was the low bidder on a package bid consisting of six jobs. The City of New York paid $15,833 to J.O.-G.I. Wrecking Co., Inc., for the demolition of the building which took place between October 19, 1979 and November 7,1979 at the end of which the lot was left vacant.
*716 Thereafter, on January 28, 1980, the city collector notified the attorneys for the fire insurance carrier that there were tax arrears of $12,827.88 to date on the property which were a lien against the fire insurance proceeds pursuant to section C17-1 et seq. of the Administrative Code.
CONTENTIONS
The plaintiff contends that the City of New York cannot demolish the premises and thereafter assert a lien pursuant to section 22 of the General Municipal Law and title C of chapter 17 of the Administrative Code. Therefore, to the extent that section 22 of the General Municipal Law and title C of chapter 17 of the Administrative Code permit the city to enter an installment contract and subsequently demolish the premises and claim a lien pursuant to those sections, said statutes exceed constitutional authority pursuant to the United States Constitution and section 1 of article I of the Constitution of the State of New York, and plaintiff is entitled to a return of its $12,826.88 paid to the city collector pursuant to the lien notice.
Plaintiff further contends that the City of New York is not entitled to offset demolition costs as against its alleged lien on the fire insurance proceeds and that once the city chose to demolish the building and extinguish plaintiff’s title, the city as a matter of law extinguished its rights to apply a lien to the fire insurance proceeds pursuant to section 22 of the General Municipal Law.
The city in opposition contends that section 22 of the General Municipal Law and title C of chapter 17 of the Administrative Code, creating a lien against the fire insurance proceeds for real estate taxes, are constitutional on their face and as applied to the facts of this case. The city further contends that it let the demolition contract as is mandated by law to enforce an order of the court and should not be penalized by a reduction of out-of-pocket demolition costs because plaintiff’s expert states he could have done the demolition on the subject premises for less.
*717 CONCLUSIONS OF LAW
Subdivision 2 of section 22 of the General Municipal Law provides in pertinent part: “Every tax district is hereby authorized and empowered to claim against the proceeds of a policy of fire insurance insuring the interest of an owner and issued on real property located therein”.
Subdivision 4 of that same section states in pertinent part that the local tax district must provide: “for the release or return to the insured of any amounts to which it would otherwise be entitled to claim provided that the insured agrees with the tax district in writing to restore the affected premises to the same or improved condition that it was in prior to the time that the lien of such district *** arose”.
Section Cl7-6 of the Administrative Code provides in pertinent part: “Whenever the proceeds of policy of fire insurance which will be or has been paid to the city instead of an insured, all or part of such proceeds may be paid or released to the insured if the insured satisfies the board that the affected premises have been or will be repaired or restored *** To secure such payment or release of proceeds the insured must notify the board within forty-five days after the mailing to the insured of a notice of the service of the certificate of special lien *** of the intention to restore or repair the affected premises”.
Plaintiff now contends that these statutes as applied to the facts of this case violate the United States Constitution and section 1 of article I of the Constitution of the State of New York. This court disagrees. A strong presumption of constitutionality attaches to all legislation (Wasmuth v Allen, 14 NY2d 391, 397; Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 540). There is a further presumption that the Legislature has investigated and found the facts necessary to support the legislation. (I.L.F.Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263; Lincoln Bldg. Assoc, v Barr, 1 NY2d 413.) Those who attack the constitutionality of legislative enactments must demonstrate their invalidity beyond a reasonable doubt. (People v Pagnotta, 25 NY2d 333.) Legislative enactments will be struck down only as a last and unavoidable resort. (Nettleton Co. v Diamond, 27 NY2d 182; Matter of Van Berkel v Power, 16 NY2d 37.)
*718 Section 22 of the General Municipal Law was enacted in 1977 (ch 738) and amended in 1978 (ch 569). Clearly the legislative intent behind this section was to take the profit out of arson by allowing the municipality to collect its taxes out of the fire insurance proceeds, unless the funds are used to restore the property.
The Legislature’s power of taxation is extremely broad, and the courts have traditionally deferred to legislative enactments in this field. (Lehnhausen v Lake Shore Auto Parts Co., 410 US 356.) This is especially so when in addition to revenue, the State seeks to invoke its police power to deter arson and save lives and housing. Based on the above factors, the court finds that the plaintiff has failed to meet its burden of establishing the invalidity of the legislative enactments in question beyond a reasonable doubt.
Plaintiff further contends that even if the statutes are valid on their face, they are invalid as applied to the facts in this case because plaintiff was not given the opportunity to repair and restore the damaged property. It should be noted in this regard that plaintiff took no action whatsoever to restore the property from the time of the fires in October of 1978 and the filing of the tax lien in January, 1980 a period of over one year even though the plaintiff was aware of the city’s concern regarding the dangers caused by the fire.
In February of 1979, the Department of Buildings made a survey of the premises and reported it a nuisance and a menace to health and safety and a fire hazard. An order to show cause returnable March 22, 1979 was served on plaintiff who defaulted on the return date and an order was entered by Mr. Justice Rader of this court on March 22, 1979 directing demolition of the building as unsafe.
Section Cl7-8 of the Administrative Code states in pertinent part: “If the insured (i) fails to notify the city of his or its intention to repair or restore the affected premises * * * the right of the insured to assert a claim against the insurance proceeds, except to the extent they exceed the amount of the lien, shall terminate.”
Here, plaintiff ignoring all prior notices did nothing to demonstrate any intention to restore the premises.
*719 This leaves the second issue as to whether or not the City of New York is entitled to offset demolition costs against the fire insurance proceeds.
It is true that sections 643a-9.0 and C26-83.5 of the Administrative Code require the reimbursement of the city for all costs and expenses of such demolition work. It is immaterial that plaintiff claims that the work could have been done for less. It is uncontroverted that $15,833 was the amount actually spent pursuant to competitive bidding as required by law.
While it is unclear from the facts presented as to who was the owner of the property at the time of the demolition, the court can only conclude that Shirpsen Realty Corp. was still the record owner responsible for the costs of the demolition that was done pursuant to a court order.
Therefore, the court finds that section 22 of the General Municipal Law and title C of chapter 17 of the Administrative Code creating a lien against fire insurance proceeds for real estate taxes are constitutional and the City of New York is entitled to retain the $12,287.88 paid to it out of said proceeds for real estate taxes and the plaintiff’s complaint is dismissed.
The court further finds that the City of New York is entitled to demolition costs of $15,833 in the unsafe building proceeding.