COMMITTEE FOR A SANE NUCLEAR POLICY/INDIANAPOLIS CHAPTER, Women's International League for Peace and Freedom/Indianapolis Branch and Indianapolis Peace Center, Inc., (d/b/a "the Hiroshima Committee"), C. Sue Craig, and Barta H. Monro, Plaintiffs,

v.

CITY OF INDIANAPOLIS, William H. Hudnut, III (in his capacity as Mayor of the City of Indianapolis) Richard I. Blankenbaker (in his capacity as Director of Public Safety of the City of Indianapolis), Joseph A. McAtee (in his capacity as Police Chief of the City of Indianapolis), and Barbara Gole (in her capacity as Director of the Department of Public Works of the City of Indianapolis), Defendants.

No. IP 85–1247–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 20, 1987.

Janice D. Kreuscher, D. William Moreau, Jr., Indianapolis, Ind., for plaintiffs.

Thomas J. Campbell, Stephen E. Schrumpf, City-County Legal Div., Indianapolis, Ind., for defendants.

## ORDER

NOLAND, District Judge.

This cause is before the Court upon cross motions for summary judgment filed on behalf of the defendants and the plaintiffs pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Whereupon the Court, having considered the memoranda filed in support of and in opposition to the defendants' and the plaintiffs' motions for summary judgment, being duly advised in the premises, and finding that there is no genuine issue as to any material facts, hereby finds that the defendants are entitled to judgment in their favor as a matter of law and therefore GRANTS the defendants' motion for summary judgment. The Court further finds that the plaintiffs' motion for summary judgment should be and hereby is DENIED.

IT IS SO ORDERED.

## MEMORANDUM ENTRY

The plaintiffs have brought this action seeking injunctive relief to prevent the defendants from interfering with them or taking legal action against them or members of their organizations as a result of their participation in the Shadow Project conducted to commemorate the bombing of Hiroshima in 1945. The matter is before the Court on the parties' cross motions for summary judgment. For reasons set forth below, this Court finds that the plaintiffs have not presented a justiciable controversy. Accordingly, the Court grants the defendants' motion for summary judgment.

## I.

The granting of a motion for summary judgment is proper when there exists "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Both parties have filed motions for summary judgment and the facts material to the determination of these motions are not disputed.

The plaintiffs in this action are various peace organizations in Indianapolis which comprise an ad hoc committee called the Hiroshima Week Committee, and individuals who participate on the committee. The purpose of the Hiroshima Week Committee is to commemorate the anniversary of the bombing of Hiroshima and Nagasaki, Japan, during the Second World War. As part of its commemoration, the Committee participates in the Shadow Project which is conducted internationally by similar peace organizations and committees. The Shadow Project entails the painting of life size human silhouette shadows on public sidewalks to create a memorial to the victims of Hiroshima who were instantly vaporized by the intensity of the atomic bombs dropped on Japan at the end of the Second World War.

The shadows are painted on the sidewalks by participants using templates of human forms cut out of heavy plastic or vinyl. The template is placed flat on the sidewalk and paint is brushed or rolled around the edges of the form. When the plastic template is removed, the outline of the human shadow remains. Additionally, the words "Hiroshima 1945/Indianapolis 19??" are stenciled near the shadow. *See* Aff. of C. Sue Craig.

The paint used to make the shadows is a non-permanent mixture of water, calcium carbonate, bentonite and black and white tempra paint. The mixture is water soluable and may wash off the sidewalk during a sufficiently heavy rainfall. Participants in the Shadow Project are instructed to only paint public sidewalks. The painting of the shadows is done between the hours of 11:00 p.m. and 6:00 a.m., August 5–6, so that the citizens of Indianapolis using the streets and sidewalks are confronted with the painted shapes. Anticipating possible public concern and objections, Shadow Project notifies the Indianapolis news media to provide information concerning the project and a telephone number of the Hiroshima Week Committee so that any objecting property owners can call to have a member of the committee remove the painting from public property adjacent to his property.

The Shadow Project was originally scheduled for August 5–6, 1985, and members of the committee made plans to conduct the project in the manner described above. On July 31, 1985, the plaintiffs met with the defendant Richard I. Blankenbaker, the Director of Public Safety of the City of Indianapolis to seek the City's approval to proceed with the Shadow Project. Mr. Blankenbaker referred the plaintiffs' inquiries to John P. Ryan, Corporation Counsel for the City of Indianapolis who responded to the Shadow Project participants' request for permission to proceed with the painting of the shadows by a letter which stated in pertinent part that, "It is the position of the City of Indianapolis that we cannot consent to any painting whatsoever on the public sidewalks of our City. Any attempt to do so may result in legal action being taken against you." Thereafter, on August 5, 1985, the City-County Council passed a resolution condemning the defacing of public property and requesting that the Director of Public Safety and the Corporation Council take action to prevent the defacing of public property.

On August 5, 1985, the plaintiffs commenced an action in Marion County Superior Court seeking a temporary restraining order and preliminary injunction to prevent the City from interfering with the execution of the project. Judge Zore issued a preliminary injunction and the Shadow Project was carried out. The action was subsequently removed to this Court pursuant to 28 U.S.C. § 1446. The plaintiffs desire to make the Shadow Project an annual event and allege that the only thing keeping them from participating in the future is their belief that they will be subject-

ed to criminal prosecution or civil liability if they do so. The plaintiffs seek to permanently enjoin the defendants from arresting them or harassing them while they participate in the Shadow Project.

## II.

In their motion for summary judgment and accompanying memorandum, the plaintiffs present a strong argument that participation in the Shadow Project is protected from interference by the City of Indianapolis by the First Amendment because painting shadows on public sidewalks constitutes free speech in a public forum. *See, e.g., Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). Because the Court finds that the plaintiffs lack standing necessary to bring this action, the Court does not reach the merits of the plaintiffs' motion for summary judgment.

▉ The principles of the standing doctrine have developed out of both the constitutional limitations on federal court jurisdiction found in Article III of the Constitution and judicially imposed prudential limitations on the exercise of jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), *Planned Parenthood Association of Chicago v. Kempeners*, 700 F.2d 1115, 1118 (7th Cir. 1983). The threshold determination in every federal action is whether the plaintiff "has made out a 'case or controversy' between himself and the defendant within the meaning of Art[icle] III." *Warth*, 422 U.S. at 498, 95 S.Ct. at 2197. Federal courts established pursuant to Article III do not render advisory opinions, *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); *J.N.S. Inc. v. State of Indiana*, 712 F.2d 303, 305 (7th Cir.1983), and the exercise of the federal court's judicial power is limited to cases and controversies. *Aetna Life Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). The case or controversy requirement applies to actions for declaratory relief as well as actions for coercive relief.

*J.N.S. Inc. v. State of Indiana*, 712 F.2d at 305, *citing*, *Golden v. Zwickler*, 394 U.S. at 108, 89 S.Ct. at 959, *United Public Workers v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947), *Aetna Life Ins. Co. v. Haworth*, 300 U.S. at 329–40, 57 S.Ct. at 463. The minimum requirements of Article III standing are that the plaintiff show "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Seperation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Thus, a litigant must show an injury which is "real, not imaginary; concrete not abstract; apparent, not illusory; and demonstrable not speculative." *Myron v. Chicoine*, 678 F.2d 727, 730 (7th Cir.1982).

▉ The plaintiffs in the present case allege that they have been injured because they believe that participants in the Shadow Project "will refrain from exercising their First Amendment rights if they believe that they will be arrested and prosecuted and/or subjected to civil liability." Plaintiffs' Complaint ¶ 15. While governmental action may be subject to constitutional challenge where there is only an indirect or chilling effect on individual First Amendment rights, "allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 12–14, 92 S.Ct. 2318, 1325–26, 33 L.Ed.2d 154 (1972). Even claims concerning First Amendment rights must be presented in the context of a specific live grievance. *Golden v. Zwickler*, 394 U.S. at 110, 89 S.Ct. at 960.

▉ The plaintiffs assert that the Ryan letter and the City-County Resolution constitute a live threat that legal action will be taken against them if they proceed with the project. Read in its entirety, however, the resolution is not a clear threat of immediate future legal action. The resolution itself condemns the defacing of public prop-

erty and requests City officials to take legal action to prevent the defacing of public property *if* any legal action can be taken. Section 4 of the resolution further requests the City to get a commitment from the groups involved in the project to remove the silhouettes from the sidewalks within a specified period of time should legal action to prevent the defacing fail. Similarly, the Ryan letter provides no more than a general statement that legal action may be taken if the sidewalks are painted. These statements in the resolution and letter fall far short of the real threat of specific injury necessary to establish the existence of a case or controversy and the plaintiffs' standing. Absent conjecture and hypothesis there is no way to determine what action, if any, the defendants could take against the plaintiffs.

To buttress their claims that legal action could be taken against them, the plaintiffs have included several City ordinances which they argue the defendants could use "to harass or retaliate against Plaintiffs." Plaintiffs' Brief at 7. These ordinances include Code of the City of Indianapolis § 28–15 Discharging liquids on public ways; § 28–19 Protection of wet sidewalks; § 1 28–194 Public ways not to be used for private purposes; and § 21–18, 21 Presenting a parade without a permit. The plaintiffs also recite the existence of several Indiana laws which are similar to laws in the States of New York and Oregon under which Shadow Project participants had been arrested in the past. *E.g.*, Ind.Code § 35–43–1–2 (mischief); § 35–45–1–3 (disorderly conduct). No actual threats of arrest or prosecution under these statutes and ordinances or use of these statutes and ordinances to harass the Shadow Project participants has been alleged by the plaintiffs. The plaintiffs' conjecture as to the possibilities of retaliation available to the defendants is simply inadequate to establish a real threat of any injury to the plaintiffs. As the Supreme Court stated in *Boyle v. Landry:*

> [I]t appears from the allegations that those who originally brought this suit made a search of state statutes and city ordinances with a view toward picking out certain ones that they thought might possibly be used by the authorities as devices for bad faith prosecutions against them.

401 U.S. 77, 81, 91 S.Ct. 758, 760, 27 L.Ed.2d 696 (1971) (rejecting the plaintiffs' standing to sue where no threats of or actual prosecutions under challenged statutes could be shown.) *See also, Communist Workers Party v. City of East Chicago, Indiana,* 556 F.Supp. 47 (N.D.Ind.1982). The mere existence of such statutes or ordinances is not sufficient to establish the threat of immediate harm. *See, e.g., Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

The uncertainty of whether any legal action would even be available to the defendants or whether any of the statutes or ordinances cited by the plaintiffs could even apply to the plaintiffs underscores the speculative nature of their claims. It is clear that the plaintiffs have suffered no actual or threatened harm sufficient to establish standing. Rather the threat of arrest and civil liability perceived by the plaintiffs is too uncertain and speculative to create a justiciable case or controversy.

The plaintiffs reliance on *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) to support their standing in this action is misplaced. The plaintiff in *Steffel v. Thompson* had been threatened with arrest by police officers for violating Georgia's criminal trespass statute by distributing handbills. His companion had already been arrested and the plaintiff had been forced to stop distributing handbills. The plaintiff brought the action to challenge the constitutionality of the criminal trespass statute. The Supreme Court determined that standing to challenge the statute is established where prosecution under it has been threatened. The plaintiffs perceived threats of some type of legal action being taken against them fall far short of the immediate threat of specific future harm necessary to establish the standing of the plaintiffs in this case.

The Court does not reach the merits of the plaintiffs' claims. To consider the

plaintiffs' claims would require the Court to render an advisory opinion balancing the rights and responsibilities of the City of Indianapolis to maintain and preserve the municipal property for the enjoyment of all citizens of Indianapolis and the rights of the plaintiffs to express their message in the manner and the form which they have chosen. The practical aspects of the sidewalk paintings, including the burden to offended citizens who would be forced to request its removal or to use a hose to remove the message themselves and the disruption of the aesthetics of the City of Indianapolis, would be proper considerations for a municipality faced with the regulation of the manner of expression on its city's streets and sidewalks. The plaintiffs, having failed to obtain the approval and whole-hearted support of the City of Indianapolis for their project, now asks this Court for judicial approval so that the participants' subjective fears of arrest or prosecution will be quieted. Any such determination would be inappropriate given the posture of this action. Accordingly, the plaintiffs motion for summary judgment is DENIED and the defendants' motion for summary judgment is GRANTED. Judgment shall be entered accordingly.

### JUDGMENT ENTRY

This cause is before the Court upon cross motions for summary judgment filed on behalf of the plaintiffs and the defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The Court, being duly advised in the premises, and having GRANTED the defendants' motion for summary judgment, hereby ENTERS JUDGMENT for the defendants and against the plaintiffs.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the plaintiffs take nothing by way of their complaint, that JUDGMENT be entered herein in favor of the defendants, and that costs be borne accordingly.